## THE PERSIAN.

## THE HESPERIDES.

### (District Court, S. D. New York. March 5, 1908.)

COLLISION—MOVING AND ANCHORED VESSEL—FOG.

A collision off the Massachusetts coast, near Pollock Rip Slue, at night, in a dense fog, between the steamship Persian, going northward, and the steamship Hesperides, which had anchored in the open ocean on account of the fog, *held* due solely to the fault of the Persian, which, after stopping, on hearing the fog bell of the Hesperides and seeing one of her anchor lights, started ahead again at greater speed, in violation of article 16 of the international navigation rules [U. S. Comp. St. 1901, p. 2869], which required her under such circumstances to navigate with caution until danger of collision was over.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 101.

Collision rules—speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.]

In Admiralty. Suit and cross-libel for collision.

Convers & Kirlin (J. Parker Kirlin, of counsel), for the Hesperides.

Daniel H. Hayne and Wheeler, Cortis & Haight (Charles S. Haight, of counsel), for the Persian.

HOLT, District Judge. These are a libel and cross-libel filed to recover damages for a collision between two steamers, the Hesperides and the Persian. The collision occurred in a dense fog, about 11:36

p. m. on the night of June 27, 1907, about five miles off Monomoy Island, on the Massachusetts coast, above the Whistling Buoy No. 2, which lies on the eastern side of the northern entrance to Pollock Rip Slue. At the southern entrance to Pollock Rip Slue is stationed the Pollock Rip Light vessel. From this light vessel to the northward, at intervals about a mile and a half apart, are stationed, first, Bell Buoy No. 1, then Whistling Buoy No. 2, and then the Pollock Rip Shoals Light vessel. There are shoals on each side of the line between the Pollock Rip Light vessel and the Bell Buoy No. 1. Above Bell Buoy No. 1, on the course to the Pollock Rip Shoals Lightship, there are no shoals to the eastward. All the region to the eastward is open ocean. The Hesperides that night was bound from Boston to New York. Shortly after passing the Pollock Rip Shoals Light vessel the fog became so dense that her pilot decided to anchor. He testifies that he headed the steamer to the northeast, and proceeded in that direction for 22 minutes under a slow bell, and then anchored. Her exact situation at anchor, as afterwards ascertained, was about half a mile northwardly from the Whistling Buoy No. 2. Two anchor lights were properly set, indicating, under rule 11, a vessel more than 150 feet long at anchor, and a fog bell was regularly sounded, as required by rule 15, until the collision. There was a strong southeast wind blowing, so that the Hesperides lay heading generally towards the southeast. While so lying at anchor, the fog whistle of a steamer approaching from the south was heard, and about 11:36 p. m. the steamer Persian under way came into collision with the Hesperides, hitting her near the stem with the Persian's bow, and causing damage to both vessels.

The Persian that night was bound from Philadelphia to Boston. Her witnesses state, in substance, that she encountered thick fog before she reached the Pollock Rip Light vessel. She passed near that light vessel and Bell Buoy No. 1. Her captain testifies that shortly after passing the bell buoy she was put on a course N. E. by N. ½ N. This course would take her about half a mile east of the Pollock Rip Shoals Lightship. She was proceeding carefully, stopping several times, and then proceeding ahead slowly. She met and passed the steamer Whitney to the west of and before reaching the Whistling Buoy No. 2. After passing the Whitney, and while the Whistling Buoy was distinctly heard to the eastward on the starboard side of the Persian, a bell of a vessel was reported by the lookout. The engines were stopped. A white light was then reported on the starboard bow of the Persian. The engines were immediately started and her wheel starboarded; the captain testifying that he supposed the light was on a schooner or small vessel, and that he would pass the schooner on his starboard side. Immediately a white light was reported on the port bow. Perceiving that the two lights were anchor lights on a large vessel directly in front, the engines were ordered full speed astern; but almost immediately, perceiving that the Persian still forged ahead and that a collision was inevitable, the engines were ordered full speed ahead, and the wheel put hard aport. This swung the Persian around, so that with her port bow she struck the Hesperides a glancing blow near her stem.

The general rule is elementary that a vessel under way which collides with a vessel at anchor is presumably at fault. The evidence, also, in my opinion, shows affirmatively that the Persian was at fault. When the lookout reported the sound of the Hesperides' bell ahead, the engines were stopped. But it was not a complete compliance with rule 16 [U. S. Comp. St. 1901, p. 2869] to stop the engines only. The rule says that a steam vessel, hearing apparently forward of her beam a fog signal of a vessel, the position of which is not ascertained, shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over. The engines having been stopped, the lookout shortly reported a light on the starboard bow. The captain immediately assumed that it was an anchor light on a schooner or small vessel, and ordered the engines to go ahead and the helm put to starboard, intending to pass the supposed schooner on his starboard hand. But there was no reason for the captain to assume that the vessel was a small one, except the fact that he saw but one light. The southeast wind swung the Hesperides towards the northwest, so that the stern anchor light was further away than the bow light. The great density of the fog that night is shown by the fact that time enough elapsed, after the bow anchor light on the Hesperides was seen and before the stern anchor light was seen, to order the helm starboarded, the engines put in motion, and the steamer to get under stronger way than she already had while drifting under stopped engines. Under such circumstances, for the captain to have assumed, on seeing one anchor light, that the vessel was a small one, and to have instantly started ahead at increased speed under a starboard helm, only changing the course enough to pass a small vessel, was, in my opinion, not navigating with caution until danger of collision was over. When the two lights were seen, the engines were reversed; but it was immediately seen that the headway of the Persian was such that it could not be overcome by reversing the engines, and that a collision was inevitable.

I cannot see that the Hesperides was at fault. It is strenuously urged that she was anchored in a fairway where she had no right to anchor. It is claimed that she was anchored on the range from the Pollock Rip Light vessel to the Pollock Rip Shoals Light vessel. But, in the first place, the evidence shows that she was not. The evidence of the men on the Whitney that she passed close to the Hesperides while going down from the Pollock Rip Shoals Light vessel on the regular compass course to reach the Pollock Rip Light vessel is, I have no doubt, disinterested, and is difficult to explain. Perhaps by reason of the strong southeast wind, or from some other cause, the Whitney had gone over to the eastward of the range. At all events, the proof of the location of the Hesperides while at anchor, taken by range observation at daylight the next morning, is decisive that she was anchored at least half a mile to the eastward of that range. Indeed, the testimony of the captain of the Persian that shortly after passing the bell buoy he put the Persian on a course N. E. by N. ½ N. and kept that course until the collision, shows that he was not taking the range course from the Pollock Rip Light vessel to the Pollock Rip Shoals Light vessel, but was on a course which would

take him at least half a mile to the eastward of the Pollock Rip Shoals Light vessel. So that, in my opinion, the proof shows that the Persian was not taki g a range course from one light vessel to the other, and that the Hesperides was not anchored on such range. The Hesperides was not anchored on any range, or in any fairway, but in the open ocean. If the slue between Pollock Rip Light vessel and the bell buoy may be regarded as a fairway, there is none above the bell buoy. The chart shows that a vessel of any size, going north, after passing the bell buoy, can go anywhere safely to the eastward, and at least a mile to the westward, of the range between the two light vessels. Even the slue itself has been held not to be such a fairway as to make it improper for a vessel to anchor there in a fog. In the case of the H. F. Dimock, that steamer was held liable for a collision in a fog with the yacht Alva anchored in the slue. The H. F. Dimock, 77 Fed. 226, 23 C. C. A. 123.

My conclusion is that there should be a decree for the libelant in the suit against the Persian, with a reference to fix the damages, and that the libel against the Hesperides should be dismissed, with costs.